UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **QUALITY INFUSION CARE, INC.,** | § |
| | § |
| **Plaintiff,** | § |
| v. | § |
| | § CIVIL ACTION NO. H-05-2929 |
| **AETNA LIFE INSURANCE COMPANY, INC.,** and | § |
| **ALTECH CONTROLS CORPORATION PPO PLAN,** | § |
| | § |
| **Defendants.** | § |

**MEMORANDUM AND ORDER**

Pending before the Court is Defendant Aetna Life Insurance Company's Motion for Summary Judgment, Docket No. 11. After considering the parties' filings and the applicable law, the Court finds that Defendant's motion should be and hereby is **GRANTED**.

**I.   BACKGROUND**

This case for recovery of medical benefits arises under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq. Plaintiff Quality Infusion Care asserts that Defendant Aetna Life Insurance wrongfully denied claims for benefits related to certain services performed by Plaintiff.

Quality Infusion is a provider of medical and pharmaceutical services. According to the Complaint, Plaintiff specializes in home infusion therapy, which allows for intravenous, subcutaneous, or epidural administration of medications in a home setting. Defendant Altech Controls Corporation PPO Plan ("the Plan")[1] is a qualified employee

---

[1] Although the Plan is named as a defendant, it has not appeared in the case.

welfare benefit plan covered under ERISA.[2]  Defendant Aetna Life funds medical benefits under the Plan through a group insurance policy, and provides claims administrative services to the Plan.  The policy names Aetna Life as the Plan's "ERISA claim fiduciary," Def.'s Mot. Summ. J., Ex. 1-B at 18.  Quality Infusion contends that Aetna Life is also the overall plan administrator, but Aetna denies that claim.

From November 2003 through January 2005, Plaintiff administered intravenous immunoglobulin (IVIG) treatments to Richard Alsenz.  Mr. Alsenz was a participant in the Altech Plan; it is undisputed that his coverage period extended from March 1, 2003, through March 1, 2004.[3]  It appears that Aetna Life had previously authorized and paid for similar infusion therapy services provided (by a company other than Quality Infusion) to Mr. Alsenz, from April 2003 to August 2003.  Aetna does not challenge Mr. Alsenz's eligibility for and receipt of those earlier benefits.

According to Plaintiff, Mr. Alsenz's physician determined in October 2003 that he needed continued infusion therapy.  Quality contacted Aetna Life on November 4, 2003 to request pre-certification of coverage for IVIG treatments, and reported the following diagnoses for Mr. Alsenz:  demyelinating disease of the central nervous system, hypogammaglobulinemia, and idiopathic progressive polyneuropathy.  Aetna requested clinical information in order to determine whether the IVIG services were

---

[2] Neither party disputes that the Plan is covered by ERISA.  *See* 29 U.S.C. § 1002(1) (2006) (defining an "employee welfare benefit plan" as "any plan, fund, or program . . . established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise . . . medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment.").

[3] Accordingly, even though the IVIG treatments continued past the coverage period, Plaintiff seeks recovery for benefits only through March 1, 2004.

2

"medically necessary."[4]  On November 5, Aetna received the following from Plaintiff: a SPECT Brain Perfusion Study, nerve conduction studies, laboratory reports, and one page of medical chart notes.  Def.'s Mot. Summ. J., Ex. E.

In reviewing Plaintiff's pre-certification request, members of Defendant's medical staff referred to an Aetna Clinical Policy Bulletin ("CPB 206"), setting forth the criteria, or clinical indications, to be used in evaluating claims for IVIG treatments.  Two sets of criteria laid out in CPB 206 appear to apply to Mr. Alsenz's diagnosis (neither party has suggested otherwise): the indications for Chronic Inflammatory Demyelinating Polyneuropathy (CIDP), and for hypogammaglobulinemia.  Def.'s Mot. Summ. J., Ex. 2-F at 8, 12.  After comparing the information sent by Quality Infusion with the criteria laid out in the CPB, an Aetna nurse consultant and medical director agreed that the criteria were not met.[5]

On November 7, 2003, Aetna sent a letter to Quality, indicating that it was denying coverage because it found that the IVIG treatments were not medically necessary or appropriate.  Under the heading "Specific Reasons and Basis for the Denial Determination," the letter directed Plaintiff to CPB 206 and described the clinical indications described therein for both CIDP and hypogammaglobulinemia.  The letter also stated that the documentation provided by Quality failed to satisfy these indications,

---

[4] The Plan denies coverage "for services and supplies not necessary, as determined by Aetna, for the diagnosis, care, or treatment of the disease or injury involved.  This applies even if they are prescribed, recommended, or approved by the person's attending physician or dentist."  Def.'s Mot. Summ. J., Ex. 1-C at 26.

[5] Specifically, a CIDP diagnosis requires a showing that the patient is "resistant to corticosteroid therapy 1 mg/kg/day."  Def.'s Mot. Summ. J., Ex. 2-F at 8.  Aetna found no documentation of resistance to corticosteroid therapy.  Further, a diagnosis of hypogammaglobulinemia must include a finding of "2 or more bacterial infections per year due to persistent and significant reduction in total IgG or IgG subclasses," as well as indicating lowered IgG levels (less than 400 mg/dL).  *Id.* at 12.  According to Aetna, although Quality Infusion produced some laboratory reports relating to Mr. Alsenz's IgG levels, these reports did not document two or more bacterial infections per year or significantly reduced IgG or IgG subclasses.  *See* Def.'s Mot. Summ. J. 8.

because "there was no report of resistance to corticosteroid therapy 1mg/kg/day," and "there was [sic] no IgG or IgG subclass labs submitted." Def.'s Mot. Summ. J., Ex. 2-G at 2.

Despite this denial, Quality Infusion initiated the IVIG treatment for Mr. Alsenz and submitted claims for payment to Aetna Life. Aetna rejected those claims because of the prior determination that the services were not medically necessary.[6] Quality appealed the initial benefits decision on March 9, 2004, and also requested documents, including the materials on which Aetna based its denial of coverage, and a copy of the Summary Plan Description ("SPD"). Quality did not enclose any additional medical records or information with its appeal. On March 11, 2004, Aetna requested clinical documentation of Mr. Alsenz's progress with IVIG therapy; on March 16, 2004, Aetna asked for "objective quantitative assessments" of Mr. Alsenz's progress. According to Aetna, however, it never received any additional information from Quality. Quality also states that it never received any of the requested documents from Aetna.

Quality's appeal was reviewed by two additional Aetna employees (a nurse consultant and a medical director), as well as by a non-Aetna physician (and hematology specialist) working for Hayes Plus, Inc., an independent review organization. All three of the new reviewers affirmed the initial denial. Aetna confirmed its findings in a March 22, 2004 letter to Quality. The letter essentially reiterated the earlier conclusion that Quality had not demonstrated satisfaction of the criteria for CIPD or hypogammaglobulinemia, and also stated that Quality had not documented clinical

---

[6] The parties differ as to the exact dates of treatment and the amount billed for the services. According to Quality Infusion, it submitted claims through March 1, 2004, for benefits due in the amount of $101,210.18. Aetna Life states that the claims continued through February 20, 2004, and that the billed charges total $77,750.35. However, the exact date range of treatment and amount billed are not material facts in assessing Defendant's liability under ERISA.

improvement of Mr. Alsenz's symptoms due to the IVIG therapy, as required by CPB 206.[7]

Plaintiff filed the instant suit in August 2005, asserting two claims under ERISA. First, Plaintiff invokes Section 502(a)(1)(B), which allows a participant in or beneficiary to a covered ERISA plan to bring a civil action "to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). According to Plaintiff, benefits are due because Aetna Life's denial of payment for the IVIG treatments was wrongful. Second, Plaintiff argues that Aetna's failure to provide Plan documents is also an ERISA violation.[8] Plaintiff seeks actual damages, statutory damages for failure to provide the requested documents,[9] interest, atttorney's fees, and costs. Quality Infusion claims standing to bring this suit based on Mr. Alsenz's assignment of his rights, benefits, and claims under the Plan to Quality, including the right to receive payments for benefits. Aetna Life does not challenge Quality's status as a valid assignee.

Defendant denies that Quality is entitled to any relief, and moves for summary judgment on both of Plaintiff's claims. Aetna Life argues that its benefits determination was neither arbitrary nor capricious, and that Quality's claim under Section 1024(b)(2) is

---

[7] In laying out the criteria relating to the medical necessity of IVIG, CPB 206 states that "[o]nce treatment is initiated, there must be adequate documentation of progress." Def.'s Mot. Summ. J., Ex. 2-F at 3.

[8] In particular, ERISA provides that "[t]he administrator shall make copies of the latest updated summary plan description and the latest annual report and the bargaining agreement, trust agreement, contract, or other instruments under which the plan was established or is operated available for examination by any plan participant or beneficiary in the principal office of the administrator and in such other places as may be necessary to make available all pertinent information to all participants (including such places as the Secretary may prescribe by regulations)." 29 U.S.C. § 1024(b)(2).

[9] Section 502(c)(1)(B) of ERISA provides that "[a]ny administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper." 29 U.S.C. § 1132(c)(1)(B).

5

invalid because Aetna is not the plan administrator, and Quality is neither a plan participant nor a beneficiary.

## II. ANALYSIS

### A. Summary Judgment Standard

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. FED. R. CIV. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). The Court views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Id*.

In accordance with the law of the circuit, the Court's inquiry in this case has been limited to the administrative record submitted with Defendant's Motion for Summary Judgment. "When assessing factual questions, the district court is constrained to the evidence before the plan administrator." *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 299 (5th Cir. 1999) (citing cases). Neither party has urged the Court to look beyond the record, or disputed the validity or accuracy of any portion thereof. Upon reviewing the record, the Court finds that there are no material facts in dispute, and that Quality's claims are appropriately submitted for summary judgment.

**B. Standards of Review**

It is settled law that if a benefits plan grants the administrator discretionary authority to determine eligibility for coverage, a district court reviewing those determinations must use an abuse of discretion standard. *E.g.*, *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc., Med. Benefits Plan*, 168 F.3d 211, 213 (5th Cir. 1999). Aetna appears to have that discretionary authority in this case, according to language in the Altech Plan itself, *see supra* note 4, and in the group policy governing the Plan. Def.'s Mot. Summ. J., Ex. 1-B at 18 ("For the purpose of section 503 of Title I of the Employee Retirement Income Security Act of 1974 . . . Aetna is a fiduciary with complete authority to review all denied claims for benefits under this policy. This includes, but is not limited to, the denial of certification of the medical necessity of hospital or medical treatment."). The Fifth Circuit has further held that questions of medical necessity involve factual determinations, for which an administrator is also entitled to an abuse of discretion standard. *Id.* at 214.

Under abuse of discretion review, a district court must defer to the administrator's determination unless it is shown to be arbitrary and capricious.[10] *Id.* at 215 (affirming "the use of the 'arbitrary and capricious' analysis as part of abuse-of-discretion review"). The employee challenging a "not medically necessary" finding has the burden of proof in showing that the decision was arbitrary and capricious. *Dowden v. Blue Cross & Blue Shield of Texas, Inc.*, 126 F.3d 641, 644 (5th Cir. 1997). The administrator's determination must be supported only by "substantial evidence." *Ellis v. Liberty Life*

---

[10] Plaintiff does not dispute the appropriateness of applying the abuse of discretion/arbitrary and capricious standard.

*Assurance Co.*, 394 F.3d 262, 273-74 (5th Cir. 2004) ("If the plan fiduciary's decision is supported by substantial evidence and is not arbitrary and capricious, it must prevail.").

Plaintiff has pointed out that because Aetna Life is both the plan insurer and an administrator, it may have a conflict of interest in making benefits determinations. Pl.'s Resp. 4. The Fifth Circuit has acknowledged these potential conflicts, and has adopted a "sliding scale" approach to determining the extent of the conflict in each case. *Vega*, 188 F.3d at 297 ("we reaffirm today that our approach to this kind of case is the sliding scale standard . . . The greater the evidence of conflict on the part of the administrator, the less deferential our abuse of discretion standard will be."). The sliding scale method, however, does not alter the district court's point of departure, which is still abuse of discretion review. *Id.* at 296.

In this case, Quality Infusion has offered no evidence other than the bare fact of Aetna's dual role to suggest a conflict. Therefore, the Court sees no reason to depart significantly from the basic deferential standard of review.[11]

### C. Section 502(a)(1)(B) Claim for Benefits

Defendant moves for summary judgment on Plaintiff's Section 502(a)(1)(B) claim, arguing that substantial evidence in the record supports its denial of benefits for the IVIG treatments rendered to Mr. Alsenz. Plaintiff counters that Defendant's denial was in fact arbitrary and capricious, for two reasons: 1) Defendant ignored the medical information submitted by Quality Infusion with its initial request for pre-certification of the treatments; and 2) Aetna Life did not demonstrate that the individuals who reviewed

---

[11] Additionally, the Court does not consider relevant the fact that Aetna authorized and paid for earlier IVIG treatments for Mr. Alsenz. There is "no statutory, regulatory, or jurisprudential authority . . . that would heighten the level of the proof needed for a plan fiduciary to determine entitlement or non-entitlement to LTD benefits simply because the fiduciary previously had approved entitlement and paid benefits to the employee in question." *Ellis*, 394 F.3d at 273-74.

8

Quality's claims were professionally qualified to render opinions on Mr. Alsenz's condition. In the Court's view, neither of Plaintiff's arguments justifies a finding that Aetna Life abused its discretion. Therefore, the Court grants summary judgment on Plaintiff's Section 502(a)(1)(B) claim to Defendant.

With regard to Plaintiff's first argument, Quality Infusion's principal complaint seems to be the statement in the initial denial letter sent by Aetna on November 7, 2003 that "there was no IgG or IgG subclass labs submitted." Def.'s Mot. Summ. J., Ex. 2-G at 2. Plaintiff points to its submissions of November 5, 2003, which do include what appear to be laboratory reports summarizing Mr. Alsenz's IgG levels. Def.'s Mot. Summ. J., Ex. 2-E at 7-11. Plaintiff then concludes that "Aetna arbitrarily and capriciously ignored or failed to recognize R.A.'s medical records indicating his hypogammaglobulinemia diagnosis, and wholly disregarded the five pages of IgG test results provided by Quality on November 5." Pl.'s Resp. 5.

Plaintiff's argument overreaches, however. The language in the November 7 denial letter, while perhaps hastily chosen, does not necessarily show that Aetna disregarded the information submitted by Plaintiff. In its reply, Aetna states that the IgG lab reports submitted by Quality simply do not reflect the information required under CPB 206 to support a diagnosis of hypogammaglobulinemia.[12] Def.'s Reply 7-8. The Court lacks the expertise to delve further into the meaning of the IgG reports. However, it does note the apparent absence of any evidence regarding the *second* required criterion for hypogammaglobulinemia: a showing of recurring bacterial infections due to reduced IgG levels. *See supra* note 5. Plaintiff has not argued that it submitted information

---

[12] For example, Defendant notes that the IgG lab reports submitted by Quality did not measure total IgG or IgG subclasses concentrations, and that regardless of what the reports actually did measure, they reflect elevated levels, not reduced levels as specified in CPB 206. Def.'s Reply 7-8.

9

showing recurrent bacterial infections. Therefore, even if it were true that Quality submitted some relevant information regarding IgG levels, it would appear that Aetna's rejection of the hypogammaglobulinemia diagnosis would still be justified.

Quality argues that it produced additional information corroborating Mr. Alsenz's hypogammaglobulinemia. Pl.'s Resp. 6. However, the information to which it points consists of the claims that it submitted to Aetna after the initial denial of benefits and before the appeal. Def.'s Mot. Summ. J., Ex. 2-H. Quality does not point (nor did it at the time) to any specific documents containing information that might satisfy the criteria set forth in CPB 206. Furthermore, if there were additional information supporting Mr. Alsenz's diagnoses and Quality's claims, Quality does not explain why it did not attach that information to its March 2004 appeal. In the absence of any further guidance or explication of this alleged additional information, the Court cannot simply assume that Aetna arbitrarily and capriciously ignored relevant information.

The Court is also unpersuaded by Quality's second argument, that Aetna's denial of benefits was arbitrary and capricious because it did not demonstrate that its reviewers were qualified to assess Mr. Alsenz's case. Quality cites absolutely no authority for the general proposition that a medical necessity determination must be made by an individual with a certain degree of specialization. Further, Quality has not demonstrated that an immunologist in particular was required in this specific instance. On the other hand, Aetna has shown that five individuals reviewed Quality's claim, including two nurse consultants, two medical directors, and an independent physician with expertise in hematology. Without further justification, the Court cannot find that relying upon these individuals constituted an abuse of discretion by Aetna.

In sum, the Court finds that Quality Infusion has failed to meet its burden, and that the record adequately supports Aetna's denial of benefits. As the Fifth Circuit has written, even in a case involving a potentially conflicted administrator, "our review . . . need only assure that the administrator's decision fall somewhere on a continuum of reasonableness – even if on the low end." *Vega*, 188 F.3d at 297. In reviewing Quality's claim, Aetna relied on an objective, previously published Clinical Policy Bulletin, belying the suggestion that its assessment was arbitrary or capricious. Aetna received only a minimal amount of clinical information from Quality, and adequately indicated the basis for its determination both in its initial denial of benefits, and in its decision on appeal. The Court finds that Aetna Life did not abuse its discretion in rejecting Quality Infusion's claims for payment, and is entitled to summary judgment on that issue.

### D.  Document Request under 29 U.S.C. § 1024(b)(2)

Defendant also moves for summary judgment on Plaintiff's claim, under 29 U.S.C. § 1024(b)(2), that Aetna improperly failed to provide Plaintiff with the Plan documents it requested in March 2004. Defendant argues that summary judgment is proper because the document request was invalid under the language of the statute. Under Section 1024(b)(2), as well as under the penalty provision contained in Section 502(c)(1)(B), only a plan administrator is obligated to provide plan documents, and only a plan administrator may be held liable for its failure to do so. *See supra* notes 8-9. Furthermore, only a plan participant or beneficiary is entitled to the plan documents, and only a plan participant or beneficiary may seek damages under the penalty provision. *Id.* Aetna argues that it is not the plan administrator (but rather only the *claims* administrator), and that Quality, although it is an assignee of Mr. Alsenz's rights and

11

benefits under the Plan, is neither a plan participant nor a beneficiary.  Def.'s Mot. Summ. J. 17-18.

The Court agrees that summary judgment for Defendant is proper on this claim.  First, the Court observes that Plaintiff makes no response whatever to Defendant's arguments regarding the Section 1024(b)(2) claim.  Second, Defendant cites persuasive and binding authority for the proposition that an assignment of benefits under an ERISA plan does not convert the assignee into a plan participant or beneficiary.  *Hermann Hosp. v. MEGA Med. & Benefits Plan*, 959 F.2d 569, 576 (5th Cir. 1992) ("We perceive a distinction between the rights of a beneficiary, as referred to in ERISA, to receive covered medical services or reimbursement therefor, and one entitled to receive payment as an assignee of such a beneficiary. Neither Mr. Nicholas' act of authorizing the Plan to make payments directly to Hermann, nor Mrs. Nicholas' assignment of the right to recover payments for benefits provided, elevated Hermann to the status of beneficiary under the Plan.")  Therefore, because Plaintiff is neither a plan participant nor a beneficiary, it cannot claim a right to review plan documents under Section 1024(b)(2), nor a right to sue for statutory penalties under Section 502(c)(1)(B).  Summary judgment is granted to Defendant.

### III.   CONCLUSION

Defendant's Motion for Summary Judgment is **GRANTED.**  Plaintiff's claims are hereby **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 1st day of December, 2006.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES
THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY
OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH
THEY MAY HAVE BEEN SENT ONE BY THE COURT.**